BECKER, Circuit Judge,
concurring.
I
I join in all of Judge Roth’s lead opinion except Parts III and IV.D, and I concur in the judgment. I write separately, however, because I believe that the opinion has “stopped short,” and not carried the logic of *1298 its argument to its ultimate conclusion. More specifically, while Judge Roth’s opinion makes clear that the “Barticheck factors” cannot be the sine qua non of the continuity determination, and its opinion undoubtedly erodes Barticheck’s precedential value, the court’s logic — as Judge Greenberg’s dissent recognizes, see Dissenting Op. at page 1304, especially lines 26-33 — compels the conclusion that Barticheck should be abandoned. Yet Judge Roth leaves it breathing and thereby will, I fear, cause mischief by engendering confusion in the district courts, in addition to a round of further appeals.
I recognize that Judge Roth’s opinion does not in terms rest on application of the six Barticheck factors. It is a fact, however, that these factors have been at the heart of this court’s civil RICO jurisprudence for the past seven years, and most district court opinions struggling with the existence vel non of civil RICO continuity use Barticheck as their polestar. In my view, now that we are in banc on a civil RICO case, it is incumbent upon us to clarify the status of Barti-check, and the lead opinion’s avoidance of the issue is not grounds for putting it off to another day. I therefore write separately in order to set forth my understanding of the implications of this court’s decision.
II
Perhaps the most serious example of the uncertainty needlessly sown by the jurisprudential reticence of Judge Roth’s opinion concerns Barticheck factor # 6, the “character of the unlawful activity.” In my view, the opinion can be read as leaving open the possibility that this factor, along with the other Bar-ticheck factors, survives today’s decision. See Lead Op. at page 1296 (“The fact that we do not employ the Barticheck factors in out-analysis here does not, however, mean that they might not be relevant in a different case in determining if continuity exists.”) (emphasis supplied); id. at 1296 n. 21 (“The Barti-check factors ... may be relevant in some cases in assessing the threat of continuing criminal conduct....”) (internal quotation marks omitted, emphases supplied). This is apparently the conclusion drawn by Judge Greenberg, whose dissent treats “character of the unlawful activity” as the most important of the factors. See Dissenting Op. at pages 1307, 1308. But Judge Roth’s opinion does not explain how to distinguish this factor from “societal threat,” which, she properly holds (if less emphatically than is warranted), cannot survive Sedima and H.J., Inc. See Lead Op. at page 1293 n. 17.
This reluctance to overrule Barticheck thus has the unfortunate potential for contributing to doctrinal confusion, for as Judge Greenberg argues in dissent, see Dissenting Op. at pages 1304-05, a given factor either is or is not relevant to the existence of a “pattern” of racketeering activity. The RICO statute does not have one provision for cases where relatedness and continuity (or then-absence) are clear and another for “those eases where relatedness and continuity are in doubt.” Lead Op. at page 1296. Accordingly, I believe that we should inter Barticheck as a whole, and should forthrightly announce which, if any, Barticheck factors remain relevant to the continuity analysis and which do not.

A,

As I read Judge Roth’s opinion, it properly treats the length of time over which the predicate acts were committed (Barticheck factor # 2), the number of unlawful acts (factor # 1), and the routineness or customariness of the acts (which in my view is, as I explain below, the only permissible interpretation of factor # 6, the character of the unlawful activity) as relevant for the continuity inquiry. Although Judge Roth does not discuss Barticheck factors # 3-# 5 (similarity of acts, number of victims, and number of perpetrators), I believe that its analysis shows that these factors are irrelevant to the continuity inquiry.
As 'Judge Roth notes, continuity is “centrally a temporal concept.” Lead Op. at page 1292 (quoting H.J., Inc., 492 U.S. at 242, 109 S.Ct. at 2902). It simply “refer[s] either to a closed period of repeated conduct [closed-ended continuity], or to past conduct that by its nature projects into the future with a threat of repetition [open-ended continuity].” Id. (quoting H.J., Inc., 492 U.S. at 241, 109 S.Ct. at 2902) (alterations supplied *1299 here). Thus duration, whether established duration or likely duration, is central to the “continuity” aspect of a RICO “pattern.” As a result, the length of time over which the predicate acts occurred (Barticheck factor #2) is of primary significance.
I agree with Judge Roth’s view that something more is needed to make out a “pattern,” and that two related predicate acts almost ten years apart are unlikely to suffice. See Lead Op. at page 1295. But the number of predicate acts (Barticheck factor # 1), on which her opinion properly relies in finding continuity here, provides all that is needed for closed-ended continuity. In conjunction with duration, the number of acts suffices to show frequency — a concept that, as Judge Roth’s opinion agrees, see Lead Op. at 1284, provides an adequate interpretation of “pattern” where completed, related acts are concerned.
As the Supreme Court has explained, the definition of a RICO “pattern” should accord with the plain meaning of that term. In particular,
[a] “pattern” is an “arrangement or order of things or activity,” and the mere fact that there are a number of predicates is no guarantee that they fall into any arrangement or order. It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them “ordered” or “arranged.”
H.J., Inc., 492 U.S. at 288, 109 S.Ct. at 2900 (citation omitted).
As I see it, the continuity prong of pattern analysis should be explicitly directed toward ruling out RICO liability premised on two or more predicate acts that are related but nonetheless “isolated” or “sporadic.” See H.J., Inc., 492 U.S. at 239, 109 S.Ct. at 2900 (discussing legislative history of the “pattern” requirement). Courts then would be in a better position to engage in reasonably meaningful discussions of whether — in the concrete circumstances of the case — continuing racketeering activity had been adequately alleged.
But the Barticheck factors fail to provide the needed guidance, and any attempt to use all six in continuity analysis, in my view, is destined for failure, in part because these factors were not originally intended to govern the continuity inquiry. Rather, they originated as an attempt to distill our case law on the RICO pattern requirement, sim-pliciter, not as an explication of separate relatedness and continuity requirements. See Barticheck, 832 F.2d at 38-39 (“Those cases ... recognized that the existence of a RICO pattern ... turn[s] on ... a combination of specific factors_”) (emphasis supplied). Some of the Barticheck factors are relevant to this general notion of pattern.[1] Once “pattern” is analytically severed into “relatedness” and “continuity,” however, there is no reason to insist that all six of the factors will logically bear on both continuity and relatedness. Barticheck did not do so. Rather, it discussed the various factors and concluded simply that the plaintiffs had adequately alleged a RICO pattern. See id. at 39.
What Barticheck did do, however, was recognize that continuity might be either open-ended or closed-ended, rejecting the defendants’ argument that RICO reached only conduct that was potentially ongoing. See id. at 39-40. Furthermore — and this accords with my view that the factors should be analyzed as they bear on screening out isolated or sporadic activity — the Barticheck panel said that the “continuity” language in the legislative history cited in Sedima
simply call[ed] for an inquiry into the extent of the racketeering activity. Although temporal open-endedness may be one measure of extent, it is not the only one. We decline to adopt a verbal formula for determining when unlawful activity is sufficiently extensive to be “continuous.”
832 F.2d at 40. I would explicitly hold, therefore, that although the duration of the predicate acts does not without more show continuity, if the acts occurred (as shown by the number of acts) or establish a threat of *1300 occurring (as shown by also considering whether they are repetitive in nature) with some frequency, they satisfy the continuity requirement, and, provided they are related, a pattern is shown.
“A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.” H.J., Inc., 492 U.S. at 242, 109 S.Ct. at 2902. What constitutes a “substantial” period of time for these purposes (as long as in excess of “a few weeks or months,” see infra) should vary with the number of acts in “the series ” of predicates. As the number of acts in a given period of time increases, the predicates begin to look less sporadic and a pattern begins to emerge. The only (relative) absolute here should be that the predicates must stretch out at least for more than three or four months to establish closed-ended continuity in light of the Court’s instruction that “[pjredicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy” the continuity requirement. Id. at 242, 109 S.Ct. at 2902.
For open-ended continuity, in contrast, we are looking for “conduct that by its nature projects into the future with a threat of repetition.” Thus, while I agree with Judge Roth that the two types of continuity are cognate, I believe that to see whether open-ended continuity is established, what we should ask is simply whether the activity threatens to demonstrate close-ended continuity at some future time. This, I believe, is the point of the three examples of open-ended continuity in the H.J., Inc. opinion, including the scenario where the defendant’s commission of predicate acts is “a regular way of conducting defendant’s ongoing legitimate business.” 492 U.S. at 242-43, 109 S.Ct. at 2902.
To return to Barticheck factor # 6, in my view, threat of recurrence is also the only respect in which the “character” of the predicate acts is relevant to the continuity inquiry. As the Supreme Court and Judge Roth’s opinion have explained, open-ended continuity merely refers to “past conduct that by its nature projects into the future with a threat of repetition.” Lead Op. at page 1292 (quoting H.J., Inc., 492 U.S. at 241, 109 S.Ct. at 2902) (emphasis supplied here). For example, if extortion is a defendant’s regular way of conducting business, then the nature or character of the conduct in the sense of its routineness or literal open-endedness makes it likely to continue into the future. That is the. sense in which the character of the activity is relevant to continuity.[2]
As Judge Roth’s opinion correctly holds, “character of the unlawful activity” may not refer to some notion of “societal threat.” Lead Op. at page 1293 n. 17. Because the opinion does not clarify the extremely limited sense in which “character” of the predicate acts is relevant to the continuity inquiry, the dissent unfortunately devotes great energy to arguing that the “character” of the predicate acts, meaning the species of act involved, weighs against a finding of continuity. See Dissenting Op. at pages 1307-10. I believe that this effort is fundamentally at odds with the RICO statute and Supreme Court precedent interpreting it.

B.

The “societal threat” requirement can be traced back to this court’s opinion in the first Marshall-Silver case, 835 F.2d 63 (3d Cir.1987). There, we reasoned that “the target of RICO ... is criminal activity that, because of its organization, duration, and objectives poses, or during its existence posed, a threat of a series of injuries over a significant period of time.” Id. at 66-67 (emphases supplied). The panel dismissed the case in part because it involved “a single victim, a single injury, and a single short-lived scheme *1301 with only two active perpetrators,” id. at 67, and thus did not pose the appropriate sort of threat. This was an eminently prudent attempt to make sense of the RICO pattern requirement. It appears to be an effort to get at the ongoing or potentially ongoing criminal activity that concerned Congress. It was essentially an extent requirement.
In the cases after H.J., Inc., however, the concern over extent of injury was transmogrified to a focus on societal injury. Rather than worry about a “series of injuries,” we have come to focus on a normative evaluation of the injuries alleged in a civil RICO case. Such focus is the basis for Judge Greenberg’s dissent in this case, but with all due respect, given what Congress and the Supreme Court have said about the RICO statute, see Lead Op. at page 1293 n. 17, I believe that the focus is inappropriate in this context.
Congress in the RICO statute specified an extensive laundry list of serious and arguably less serious acts that all constitute racketeering activity, and so it strikes me as improper to maintain that the statute’s “pattern” requirement builds in a normative evaluation of the seriousness of the predicate acts. The concern about federalizing and attaching drastic penalties to “garden variety fraud,” see Dissenting Op. at page 1310, is a legitimate one, but one that must be addressed by Congress rather than the courts. And Congress has told us what sorts of acts to worry about. Our concern with the pattern requirement is simply to insure that RICO liability is not attached to “isolated” or “sporadic” predicate acts. That task requires no inquiry into the seriousness of the acts. The “threat” for which we are looking is the threat of repeated prohibited conduct, not the threat of grievous harm.
With this in mind, I believe that this court should plainly state that the number of victims (factor # 4) and number of perpetrators (factor # 5) do not bear on the continuity inquiry. Certainly, neither the number of victims nor the number of perpetrators should affect the analysis of duration which, as Judge Roth explains, the Supreme Court has rendered the centerpiece of the continuity jurisprudence. Indeed, these factors seem to inform the notion of societal threat, and hence are out of bounds.
Nor does the number of victims or perpetrators go to making out a pattern. For example, one office-tower bomb triggered during business hours could result in a tragically large number of victims, but just because the bombing happened during the day instead of at night when few people were there does not make it more likely that the bombing reflects non-isolated or non-sporadic activity. Similarly, three bombings by several conspirators trying to eliminate one target would not (if successful) reflect a greater threat of continuing racketeering activity than would three bombings by the Unabom-ber, because it is only the repetitive nature of the activity and not the number of victims or perpetrators that helps establish a threat of continuity.
The number of predicate acts could indicate an extent of activity that would bear on whether the activity is sporadic or frequent, and extent of the predicate activity is therefore relevant to continuity, as Judge Roth seems to recognize. See Lead Op. at page 1295 (“[If] the predicate acts have been a regular way of conducting defendant’s legitimate business over a long period in the past, the RICO pattern been satisfied.”). But number of victims is not relevant, for, under the present congressional scheme, we are looking for continuity in order to show a pattern of racketeering acts, not harm from the acts. See supra page 1302 n. 2.

C.

We have previously held that “similarity” (factor # 3) does not bear on continuity, see, e.g., Marshall-Silver, 894 F.2d at 595 n. 1, and Judge Roth has already made length of time (factor # 2) and number of unlawful acts (factor # 1) part of her core analysis, irrespective of Barticheck. In my view, the lead opinion leaves virtually nothing of Barticheck and I believe — along with Judge Greenberg in dissent, see Dissenting Op. at page 1304, especially lines 26, 33 — that we should say so. While I share Judge Roth’s uneasiness as to where this leaves the law, I can only hope *1302 that its eloquent and clarion call will not be ignored by Congress.
Judges STAPLETON and McKEE join in this concurrence.

. I do not mean to suggest that the number of perpetrators or victims, while irrelevant to continuity, is relevant to relatedness, for it is not. The identity or other defining characteristics of the victims and perpetrators, however, may help establish relatedness of predicate acts.

. This interpretation of "character” of the unlawful activity as "repetitive character” also makes sense of the admonition in Kehr Packages to consider the underlying scheme in mail fraud cases. To the extent that the underlying scheme indicates a likelihood of a defendant's continuing to commit predicate acts, it may be relevant to open-ended continuity. (Of course, the underlying scheme also may supply an "organizing principle” that establishes relatedness. See supra at page 1299 (quoting H.J., Inc. 492 U.S. at 238, 109 S.Ct. at 2900).) In all, cases, however, we are looking for a pattern (and thus continuity and relatedness) of the predicate acts of racketeering activity, see H.J., Inc., 492 U.S. at 237-40, 109 S.Ct. at 2900-01; id. at 242, 109 S.Ct. at 2902.